IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CARLA KIRKSEY, JOANNA      : CIVIL ACTION
FERGUSON, SAABIRAH WILLIAMS, : NO. 18-03673
JACQUELYN WITHERSPOON, and    :
DEBORAH MONTGOMERY,         :
                                :
     Plaintiffs,           :
                                :
v.                                   :
                                :
OFFICER ALBERT D. ROSS and    :
CITY OF CHESTER, PENNSYLVANIA, :
                                :
     Defendants.           :


**M E M O R A N D U M**


EDUARDO C. ROBRENO, J.                      APRIL 12, 2019


       This case concerns allegations of multiple acts of
sexual assault and related misconduct committed by a former
police officer, and allegations that the officer's employer, a
local municipality, had policies or practices that enabled the
officer to inflict the harm over a period of two years.

       The plaintiffs in this case, Carla Kirksey, Joanna
Williams, Saabirah Ferguson, Jacquelyn Witherspoon, and Deborah
Montgomery, allege that Albert Ross sexually assaulted them at
different times between 2015 and 2017.  During this period, Ross

was employed as a police officer by the City of Chester.  In
each alleged instance of sexual assault, Ross was in uniform,
and in some cases he and the victim were at the police station.

The City moved dismiss the Second Amended Complaint.
The Court finds that Plaintiffs have made sufficient pleadings
to state legally cognizable claims, and therefore the Court will
deny the motion to dismiss.

## Contents

I.   BACKGROUND ................................................. 3
  A.   Procedural History ...................................... 3
  B.   Factual Allegations ..................................... 3
  C.   Pending Claims .......................................... 7
II.  LEGAL STANDARDS FOR A MOTION TO DISMISS ................... 8
III. DISCUSSION ............................................... 9
  A.   Statute of Limitations (Witherspoon and Kirksey) ........ 9
  B.   Color of Law (Witherspoon, Kirksey, Montgomery) ........ 15
  C.   Municipal Liability (All Plaintiffs) ................... 17
IV.  CONCLUSION .............................................. 21

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs filed a Complaint on August 27, 2018, ECF No. 1, and then a First Amended Complaint on September 10, 2018. ECF No. 6.  The City of Chester and Ross filed separate motions to dismiss, ECF Nos. 9 and 18, which the Court granted with leave to amend.  ECF No. 22.  In its ruling, the Court barred certain claims from being repleaded due to the statute of limitations having run on those claims.  Id.  Plaintiffs then moved for expedited discovery in regard to other claims, but were denied.  ECF Nos. 23 and 25.

Plaintiffs filed a Second Amended Complaint on February 6, 2019.  ECF No. 29.  The City of Chester filed a motion to dismiss on February 19, 2019.  ECF No. 30.  Ross filed an Answer on February 26, 2019.  ECF No. 31.  Plaintiffs responded to the motion to dismiss.  ECF Nos. 36 and 37.  The City has moved for leave to file a reply brief.  ECF No. 39. Pending before the Court are the City's Motion to Dismiss the Second Amended Complaint, and the Motion for Leave to File a Reply Brief.

### B.   Factual Allegations

This brief overview is based on the averments in the Second Amended Complaint, viewing the allegations in the light most favorable to Plaintiffs.  Ross was a police officer for the

3

City of Chester, Pennsylvania, between 2013 and 2017.  ECF No.
29 ¶ 3.  Four of the plaintiffs reside in Chester (Kirksey,
Williams, Ferguson, and Montgomery); one plaintiff resides in
Marion, South Carolina (Witherspoon).  Id. ¶¶ 10-14.  At all
times discussed below, Ross was on duty and in uniform.

### 1.  Witherspoon

Witherspoon was an anger management instructor.  In
April 2015, she went to the Chester City Police Department to
inquire whether Officer Anita Amaro had any potential clients.
After concluding the meeting, she went to the elevator and Ross
followed her in.  Witherspoon did not know Ross.

While in the elevator, Witherspoon was embraced by
Ross without her permission.  Ross prevented her from exiting
and when the doors closed, he grabbed her and forcibly kissed
her, "leaving his saliva dripping from her face."  Id. ¶¶ 87-91.

### 2.  Kirksey

Kirksey went to the Chester City Police Department to
pay a traffic fine in August 2015.  Kirksey entered an elevator
in which Ross was already present.  Kirksey did not know Ross.

When Kirksey tried to leave the elevator, Ross pulled
her back in.  After the doors closed, Ross lifted her shirt,
grabbed her breast and sucked on it, and then put his tongue in
her mouth.  Kirksey reported the incident, but no charges were
filed.  Id. ¶¶ 119-129.

### 3. Ferguson

In May 2017, Ross was investigating a disturbance at Ferguson's residence.  Ferguson did not know Ross.

While in the kitchen, Ross placed the butt of his flashlight down Ferguson's shirt and shoved the flashlight between her breasts then pulled the flashlight toward him exposing her breasts, stating "let me see."  She reported the incident, but no action was taken.  Id. ¶¶ 156-167.

### 4. Williams

In August 2017, Ross was sent to investigate the activation of a home alarm at Williams's residence.  Williams did not know Ross.

Williams met Ross at the door and explained the alarm had gone off by accident.  Ross attempted to the enter the residence, but Williams stopped him.  The two had a brief conversation before Ross grasped Williams's left breast.  Id. ¶¶ 210-17.

### 5. Montgomery

In August 2017, Ross was driving by Montgomery's residence because he was on patrol in that area.  Montgomery and Ross were acquaintances from a previous workplace.  ECF No. 10 at 5.

Ross stopped his car at Montgomery's residence and spoke with her.  He then asked for a hug.  As she raised her

arms, Ross "grabbed her breasts and squeezed and fondled them."
Montgomery reported the incident. Ross was investigated and
charged with stalking, indecent assault, and official oppression
and harassment. ECF No. 29 ¶¶ 262-69.

### 6. Ross's employment

In 2013, Ross applied to be a City of Chester police
officer. During Officer Ross's application and interview to be
a police officer in the City of Chester Police Department, the
City learned that Ross had been previously accused of sexual
harassment while working at three different law enforcement
employers (Chester Housing Authority, George Hill Correctional
Facility, and Darby Borough Police Department). Id. ¶¶ 27-28,
33. Both the Mayor and the Police Commissioner warned against
hiring Ross because of his history, and they refused to sign
paperwork for his application because Ross had omitted
documentation from his employment at Darby. Id. ¶¶ 28-35.

After he was hired by the City, Ross was cited for
insubordination on two occasions, and his employment was
terminated in 2013. Id. ¶ 44. Both instances related to
misconduct in which women were involved or appear to have been
involved: Ross stopped a female motorist by using illegal
police lights installed on Ross's civilian vehicle; Ross
returned to his home following a domestic incident, despite
being told not to do so. Id. ¶¶ 45-47.

Nevertheless, Ross was re-hired in November 2013. Id.
¶ 44. Plaintiffs allege that the City Council, in particular
Portia West, insisted Ross was rehired. Id. ¶ 51. Plaintiffs
allege that the City was deliberately indifferent to Ross's past
and pertinent misconduct and the City's affirmative acts of
employing and rehiring Ross, and failures to act to prevent the
numerous sexual assaults, created the dangers to Plaintiffs.
Plaintiffs also allege that other officers knew about Ross's
character and misconduct, but were unable to raise their
concerns because the Council protected Ross and would have
retaliated against a reporting officer. Id. ¶¶ 76-79.

## C.    Pending Claims

### 1.    City

Plaintiffs have alleged Monell liability against the
City, via 42 U.S.C. § 1983, for failure to screen during hiring
and rehiring (Counts I.A, II.A, III.B, IV.B, V.B), and for
failure to discipline (Counts I.B, II.B, III.C, IV.C, V.C).
Plaintiffs withdrew claims of state created danger during
briefing. ECF No. 37 at 1.

### 2.    Ross

Ferguson, Williams, and Montgomery have alleged
against Ross, via § 1983, violations of substantive due process
rights to be free from intrusions into bodily integrity (Counts

7

III.A, IV.A, V.A).  The same three plaintiffs also allege state

law claims for assault and battery (Counts VI.A, VI.B, VI.C) and

intentional infliction of emotional distress Counts VII.A,

VII.B, VII.C).


## II.  LEGAL STANDARDS FOR A MOTION TO DISMISS

A party may move to dismiss a complaint for failure to

state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  When considering such a motion, the Court must

"accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the non-moving party."

DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir.

2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d

Cir. 1989)).  To withstand a motion to dismiss, a complaint's

"[f]actual allegations must be enough to raise a right to relief

above the speculative level."  Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007).  This "requires more than labels and

conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  Id.

To survive a motion to dismiss, the pleadings must

contain sufficient factual allegations to state a facially

plausible claim for relief.  See Gelman v. State Farm Mut. Auto.

Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff is entitled to all reasonable inferences from the facts alleged. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval by Twombly, 550 U.S. at 555). Legal conclusions, however, are not entitled to deference, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. In deciding a Rule 12(b)(6) motion, a court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents, insofar as any claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

The Court views the allegations by Plaintiffs in the light most favorable to them.

### A.  Statute of Limitations (Witherspoon and Kirksey)

The parties dispute whether Witherspoon's and Kirksey's claims are barred by the statute of limitations.

Witherspoon and Kirksey allege Ross assaulted them on separate occasions in 2015. See ECF No. 30 at 8-10; ECF No. 37 at 7-29. (No time-bar challenge has been made to the claims brought by Ferguson, Williams, or Montgomery.)

### 1. Law

Whether the statute of limitations has run turns on two issues: 1) the length of the period to commence legal action and 2) the date on which the claim began to accrue. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). The length of the statute of limitations for claims brought under § 1983 "is governed by the personal injury tort law of the state where the cause of action arose." Id. (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). In Pennsylvania, the length of the statute of limitations for a § 1983 claim is two years. Id.; 42 Pa. Cons. Stat. § 5524.

"State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled." Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). In Pennsylvania, the discovery rule operates to delay the running of the statute of limitations. Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). "As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the

exercise of reasonable diligence, to know that he is <u>injured and by what cause</u>." <u>Id.</u> (emphasis added).

Whether or not Pennsylvania's discovery rule applies in a given case is a question of fact. <u>Gleason v. Borough of Moosic</u>, 15 A.3d 479, 485 (Pa. 2011). As such, it is properly a question for the jury unless no reasonable juror could find otherwise:

> Since this question involves a <u>factual determination</u> as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a <u>jury is to decide</u> it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

<u>Fine</u>, 870 A.2d at 858-59 (emphasis added) (citations omitted).

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." <u>Wisniewski v. Fisher</u>, 857 F.3d 152, 157 (3d Cir. 2017).

Here, the Court must consider the differences between discrete and continuous violations, and accrual and discovery

doctrines as they pertain to municipal customs or policies.[1]  ECF No. 22.

The Third Circuit has held that the discovery rule tolled the statute of limitations on a "selective-enforcement" claim based upon racial profiling.  Dique, 603 F.3d at 188.  In Dique, the plaintiff could not have known "that he might have a basis for an actionable claim" until "extensive documents describing the State's pervasive selective-enforcement practices" were released to the public.  Id.

---

[1]      In Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995), the Second Circuit held:

> Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," see Monell v. Department of Social Services, 436 U.S. 658, 694 (1978), a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom."

52 F.3d at 1157.  Pinaud is still good law in the Second Circuit.  See Laboy v. Ontario Cnty., 318 F. Supp. 3d 582, 588 (W.D.N.Y. 2018).

The Third Circuit has not had occasion to reject Pinaud outright.  At most, the Third Circuit stated in dicta (in a non-precedential opinion) that there was "no basis in [Third Circuit] precedent for applying such a 'delayed accrual' theory," but the court did not have to reach the issue.  Tengood v. City of Phila., 529 F. App'x 204, 210 & n.5 (3d Cir. 2013) ("[W]e decline to address the merits of Appellant's 'delayed accrual' argument . . . .").

As in Dique, the claims at issue here are policy- or custom-based claims, in that the City had policies/customs that resulted in a failure-to-screen and a failure-to-discipline.

In a related type of Monell case, a court in this District has held that a plaintiff alleging failure to train or supervise had to plead facts of a "pattern of constitutional violations demonstrating such a failure" in order to show the "deliberate indifference" required for liability. Tate v. City of Phila., No. CIV.A. 13-5404, 2015 WL 437432, at *3 (E.D. Pa. Feb. 3, 2015).

As in Tate, "[a] failure-to-screen claim typically requires [the plaintiff to allege] the same two elements as a failure-to-train claim:  deliberate indifference and causation." Does v. Se. Delco Sch. Dist., 272 F. Supp. 3d 656, 679 (E.D. Pa. 2017).  Likewise, failure-to-discipline claims require a pattern:  "a city may be liable for its failure to discipline an officer after multiple complaints against him, particularly where the prior conduct which the officer engaged in is similar to the conduct which forms the basis for the suit." McDaniels v. City of Phila., 234 F. Supp. 3d 637, 645 (E.D. Pa. 2017) (quoting Wnek v. City of Phila., No. CIV.A. 05-CV-3065, 2007 WL 1410361, at *3 (E.D. Pa. May 10, 2007)).

### 2. Analysis

Witherspoon's and Kirksey's claims survive the motion to dismiss because it is not apparent on the face of the complaint that their claims are time-barred.

The custom or policy is a fact that goes to the causation of their injuries. Given that a pattern of violations is typically required, these plaintiffs cannot have been expected to know the facts that would inform them that they had Monell claims based on customs and policies until there was a colorable pattern of violations evidencing that such customs or policies were in place.

The City argues that the plaintiffs should have known at the time they were injured by Ross that they had Monell claims. But that asks too much of these individual plaintiffs who knew nothing of each other, Ross's other assaults, Ross's prior employment history, employment conduct while with the City, or Ross's relationship with the City Council. On the facts and circumstances alleged in this case, these plaintiffs could not be expected to be aware of or suspect that there was a custom or policy that would give rise to Monell claims at the time Ross assaulted them.

Given that the application of the discovery rule turns on a factual inquiry, the answer to which is not apparent on the face of the complaint, this case should proceed to discovery,

and the City can explore when these plaintiffs learned or should have learned of the predicate facts necessary to know that they had a cause of action against the City.

## B.    Color of Law (Witherspoon, Kirksey, Montgomery)

In one whole paragraph spanning a full page and a quarter, the City of Chester challenges liability by arguing that because Ross was not on official business and his contacts were not pursuant to any police business, he was not acting under color of law.  ECF No. 30, Memorandum at 10-11.

In support of its argument that Ross did not act under color of law, the City cites Washington-Pope v. City of Philadelphia, 979 F. Supp. 2d 544 (E.D. Pa. 2013).  But the City's attempt to deny liability under this theory founders at its launch.[2]

The Court need not decide whether Ross was acting under color of law because the City may be liable even if Ross

---

[2]       Washington-Pope is distinguishable.  There, the incident involved two police officers, one of whom threatened the other with a firearm while they were travelling in a police car.  Key to the outcome in Washington-Pope was the "blue-on-blue" situation in that case, and much of the analysis necessarily concerned that issue.  See 979 F. Supp. 2d at 562-68.  But in each instance here, a civilian was assaulted by a police officer who was in uniform, on duty, and conducting police business (going about his duties at the police station, attending a disturbance call, patrolling in a police car).

did not act under color of law.[3]  In brief, "after Monell[,] a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue, such as through a policy or custom."  Id. at 573 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)) (quotation marks omitted).  And in the Third Circuit, "[i]t is possible for a municipality to be held independently liable for a substantive due process violation even in situations where none of its employees are liable."  Id. at 573-74 (quoting Brown v. Commw. of Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003)) (quotation marks omitted).  In the situation where a police officer does not act under color of law, the officer's acts may still be found to be a "causal conduit for the constitutional violation committed by the City."  Id. at 575 (quoting Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994)) (quotation marks omitted).  Accordingly, even if Ross was not acting under the color of law, his acts may still be found to be a causal conduit for the alleged constitutional violations by the City of Chester.

---

[3]      For the § 1983 claims brought by Ferguson, Williams, and Montgomery against Ross, plaintiffs will need to show that Ross was acting under color of law.

**C. Municipal Liability (All Plaintiffs)**

Plaintiffs contend that the City is liable in two ways because its customs or policies resulted in: 1) failure to screen during hiring/retention, and 2) failure to discipline. The City argues that the Second Amended Complaint fails to state viable causes of action under Monell because Plaintiffs "must demonstrate an affirmative link between the policy and the particular constitutional violation alleged," and "must demonstrate how it actually caused the constitutional violation." ECF No. 30, Memorandum at 12.

The City's argument veers from whether Plaintiffs have alleged sufficient facts "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, to arguing the merits of the causes of action based on the facts that have been alleged. See ECF No. 30, Memorandum at 12-16. But the proper inquiry is whether given the allegations, considered in the light most favorable to Plaintiffs, give rise to the plausible inference that the City of Chester is liable for its practices of screening during hiring/retention or practices of disciplining wayward officers. The factual allegations in support of each of these theories are analyzed in turn below.

### 1. Framework for liability based on policy, custom, or deliberate indifference

"There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents.  Rather, a municipality may be held liable only if its policy or custom is the moving force behind a constitutional violation."  Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citations and quotations omitted).

"If the policy or custom does not facially violate federal law, causation can be established by demonstrating that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  Tarapchak v. Cnty. of Lackawanna, 739 F. App'x 172, 178 (3d Cir. 2018) (alterations omitted) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)).

The plaintiff must also allege conduct by a municipal decisionmaker.  McTernan v. City of York, Pa., 564 F.3d 636, 658-59 (3d Cir. 2009).

### 2. Screening during hiring/retention

"A plaintiff can demonstrate municipal responsibility by establishing that 'the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted

by custom.'" <u>Dress v. Twp.</u>, No. CV 16-4918, 2017 WL 480410, at
*3 (E.D. Pa. Feb. 6, 2017) (quoting <u>Beck v. City of Pittsburgh</u>,
89 F.3d 966, 971 (3d Cir. 1996)).

      "Under limited circumstances, courts have recognized
claims for <u>Monell</u> liability based on a municipality's hiring
decisions—in particular 'where adequate scrutiny of an
applicant's background would lead a reasonable policymaker to
conclude that the plainly obvious consequence of the decision to
hire the applicant would be the deprivation of a third party's
federally protected right[s].'" <u>Robinson v. Fair Acres</u>
<u>Geriatric Ctr.</u>, 722 F. App'x 194, 199 (3d Cir. 2018) (quoting
<u>Bryan Cnty.</u>, 520 U.S. at 411). A plaintiff must allege a
particular employee's "background was so obviously inadequate as
to put [the employer] on notice of the likelihood that [a
violation or] injury would result." <u>Id.</u>

      Plaintiffs allege that the City of Chester and
decisionmakers knew about Ross's previous employment, the
allegations of sexual harassment and sexual assault that were
levelled against Ross, and that Ross was separated from those
previous positions. <u>See</u> <u>supra</u> I.B.6. Plaintiffs further allege
the City was put on notice of at least one allegation that Ross
assaulted Kirksey during Ross's employment with the City, and
that Ross had been disciplined for insubordination related to
misconduct involving women. <u>Id.</u>

Plaintiffs made factual allegations that are sufficient to raise above the speculative level that Plaintiffs have a right to relief for the customs or policies that resulted in a failure to screen during the hiring and retention of Ross.

### 3. Disciplinary practices

The City did not raise much of an argument challenging the allegations of failure to discipline. ECF No. 30, Memorandum at 15-16.

Failure-to-discipline claims, like failure-to-train claims, are "generally considered a subcategory of municipal policy or practice liability." Buonadonna v. Se. Delco Sch. Dist., No. CIV.A. 14-02708, 2015 WL 2365629, at *7 (E.D. Pa. May 18, 2015) (citing Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) rev'd on other grounds, 135 S. Ct. 2042 (2015)). As such, a plaintiff must ultimately establish that the harm suffered was caused by a municipality's custom or policy. Id. at *8 (quoting Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010)). To prevail, a plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120,

127 (3d Cir. 1998) (citing <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 (3d Cir. 1997)).

As discussed above, Plaintiffs alleged that the City and policymakers knew of Ross's past run-ins for alleged sexual misconduct and knew of at least Kirksey's allegations and other instances of misconduct involving women.  Plaintiffs also alleged Ross assaulted other women after Kirksey's allegations had been made.  Plaintiffs have alleged sufficient facts to raise above the speculative level a claim for relief based on a failure to discipline.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss.