IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARLA KIRKSEY, et al.          :     CIVIL ACTION
                               :     NO. 18-3673
          Plaintiffs,          :
     v.                        :
                               :
CITY OF CHESTER, et al.,       :
                               :
          Defendants.          :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    November 8, 2021

## I.   Introduction

Pro se Plaintiff Carla Kirksey brought this action against Defendant City of Chester (the "City") based on an August 2015 incident in which she was sexually assaulted by a former City Police Officer named Albert Ross. Her remaining claim is a municipal liability claim under 42 U.S.C. § 1983 (a "Monell" claim) alleging that the City's failure to discipline Ross caused her injuries. Before the Court is the City's motion for summary judgment.

For the reasons that follow, the City's motion will be granted.

## II.  Factual Background and Procedural History[1]

Albert Ross applied to be a City of Chester police officer in 2013. During his application process, the City learned that

---

[1]    The Court views the facts in the light most favorable to Plaintiff, the non-moving party in this case.

Ross had previously been accused of sexual harassment while working at three different law enforcement employers (Chester Housing Authority, George Hill Correctional Facility, and Darby Borough Police Department). Both the mayor and police commissioner advised against hiring Ross because of his history, and both refused to sign paperwork for his application because Ross had omitted documentation from his employment at Darby. Despite their concerns, the City hired Ross.

After he was hired, Ross was cited for insubordination on two occasions. First, Ross stopped a female motorist by using illegally installed police lights on his civilian vehicle. Second, he disobeyed an order not to return to his former girlfriend's home following a domestic incident after which his former girlfriend stated she was put "in fear of her life." Def's Mot. Summ. J. Ex. 0016, ECF No. 64-1. After learning of these incidents, Mayor John Linder terminated Ross's employment in August 2013. However, because the City Code grants the power to terminate police officers to City Council only, Ross was re-hired in November of 2013. Upon his re-hiring, Ross was subject to a year of probation and was confined to a desk in the Accident Records office so that he could be closely monitored by his supervisors.

On August 24, 2015, Kirksey was visiting the Chester Courthouse, which shares a building with the City Police

Department. Kirksey entered an elevator in which Ross was already present. She did not know Ross. Kirksey claims that when she attempted to leave the elevator, Ross pulled her back in. After the doors closed, Ross lifted her shirt, grabbed her breast and sucked on it, and then put his tongue in her mouth. Kirksey reported the incident the next day, but no charges were filed.

On January 13, 2016, Kirksey attended a Chester City Council meeting. According to the Council Minutes, she asked to address the Police Department, saying the following:

> I encountered a situation back in August and I did report it in a manner in which it should have been done and I was told that they had closed the case. It was a sexual assault in the elevator . . . . This cop has done it before and I have full knowledge that he's been let go from different places and he's here in Chester serving our [c]itizens.

Def's Mot. Summ. J. Ex. 0112, ECF No. 64-1. According to deposition testimony, councilman Al Jacobs referred Kirksey to an attorney after the meeting.

Despite Kirksey's assertion to the City Council that she had "full knowledge" that Ross had "done it before" and had been "let go from different places," she later stated in her deposition that she knew nothing about Ross nor his reputation until his arrest in 2017. Pl. Dep. 99: 6-24; 6-22, ECF No. 64-1.

Kirksey brought this case, initially along with four other female plaintiffs who also alleged that Ross sexually assaulted them, against the City of Chester and Albert Ross on August 27, 2018.[2] Kirksey and the four other plaintiffs filed an amended complaint on September 10, 2018 (the "First Amended Complaint"). After the City and Ross filed a motion to dismiss the First Amended Complaint, the Court dismissed Kirksey's claims against Ross as time-barred. The Court permitted her claims against the City to go forward as municipal liability claims without ruling on the issue of whether the claim was barred by the two-year statute of limitations.

Kirksey amended her complaint for a second time in February 2019 (the "Second Amended Complaint"). The Second Amended Complaint asserted two municipal liability claims against the City for failure to screen during hiring and rehiring and failure to discipline Ross by termination for his misconduct after he was hired. The City moved to dismiss the Second Amended Complaint, arguing, inter alia, that the statute of limitations barred the claims, that Ross did not act under color of state law, and that Kirksey did not sufficiently plead her municipal liability claims.

---

[2] The other four plaintiffs' claims were settled by the parties. Kirksey's claim is the only remaining claim before the Court.

The Court denied the City's motion to dismiss. With respect to the statute of limitations, the Court found that the discovery rule applied because it was not clear based on the face of the Second Amended Complaint that Kirksey knew or should have known of a custom or policy that would give rise to her municipal liability claim early enough that the statute of limitations would have barred the claims. Kirksey v. Ross, 372 F. Supp. 3d 256, 263 (E.D. Pa. 2019). The Court also found that, based on the Third Circuit's holding in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994), "the City may be liable even if Ross did not act under color of law." Kirksey, 372 F. Supp. 3d at 264. Finally, the Court found that at the motion to dismiss stage, Kirksey had alleged sufficient facts to support her Monell claims. Id. at 264-66.

In a telephone status conference held on the record, counsel for both parties[3] notified the Court of their discovery of the minutes from the 2016 City Council meeting at which Kirksey testified. In light of her admissions at that meeting, the parties agreed that her knowledge of Ross's previous conduct had caused the statute of limitations on her Monell claim based on failure to screen to run. However, Kirksey's counsel

---

[3] Kirksey's counsel moved to withdraw immediately after the City filed the present Motion for Summary Judgment, pointing to "irreconcilable differences" between himself and Kirksey, Mot. for Leave to Withdraw 1, ECF No. 65, which the Court granted. Kirksey now proceeds pro se.

expressed a desire to continue to pursue her other Monell claim based on a failure to discipline for the 2013 instances of misconduct that led to Ross's firing and subsequent re-hiring. Kirksey's counsel claimed Kirksey did not learn (and could not have reasonably learned) of these instances until later, so her failure to discipline claim would not be time-barred. After the hearing, Kirksey withdrew her failure to screen claim, leaving only her Monell claim for failure to discipline by termination.

As Kirksey did not seek to further amend her complaint thereafter, the allegations contained in Count II(B) of the Second Amended Complaint remain operative. Count II(B) alleges that the City's failure to discipline Ross by termination for his acts of sexual misconduct and insubordination shortly after his hiring caused Kirksey's eventual injury.

## III. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence

might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

## IV. DISCUSSION

### A. Statute of Limitations

Whether the statute of limitations has run turns on two issues: (1) the length of the period to commence legal action; and (2) the date on which the claim began to accrue. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). The length of the statute of limitations for claims brought under § 1983 "is governed by the personal injury tort law of the state where the

cause of action arose." Id. (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). In Pennsylvania, the length of the statute of limitations for a § 1983 claim is two years. Id. (citing 42 Pa. Cons. Stat. § 5524).

"State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled." Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). In Pennsylvania, the discovery rule operates to delay the running of the statute of limitations. Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). "As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." Id. (emphasis added). In other words, the time period for a claim to be brought begins to accrue when the plaintiff knows or should have known that she might have a basis for an actionable claim.

A plaintiff attempting to apply the discovery rule at summary judgment bears the burden of demonstrating that she exercised reasonable diligence in determining the existence and cause of her injury. Mest v. Cabot Corp., 449 F.3d 502, 511 (3d Cir. 2006) (citing Cochran v. GAF Corp., 666 A.2d 245, 249 (1995).

Under the applicable Pennsylvania law, whether or not the discovery rule applies in a given case is a question of fact. Gleason v. Borough of Moosic, 15 A.3d 479, 485 (Pa. 2011). Accordingly, it is a question for the jury unless no reasonable juror could find otherwise. See Fine, 870 A.2d at 858-59 ("Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.") (citations omitted).

The City again argues that Kirksey's remaining claim is barred by the statute of limitations. It now asserts that Kirksey's January 2016 statement before the City Council prevents the discovery rule from applying to her remaining claim because the content of her statements demonstrates she was aware, or at least could have been aware through the exercise of reasonable diligence, of the basis of her failure to discipline claim. Specifically, the City argues that if she had exercised reasonable diligence in pursuing her failure to screen claim—the basis of which she clearly knew in January 2016—she would have discovered Ross's other incidents of misconduct that gave rise to her failure to discipline claim. As the present case was filed in August 2018, it would be barred by the two-year statute of limitations if the claim began to accrue in January 2016.

9

In any event, the Court does not need to determine whether Kirksey knew or should have known of the basis of her claim in January 2016 because Kirksey has not satisfied her burden of demonstrating that the discovery rule applies to her remaining claim. See Mest, 449 F.3d at 511 ("[T]he plaintiff attempting to apply the discovery rule bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury."). Neither the Second Amended Complaint nor Kirksey's response in opposition to summary judgment contains a definitive statement of when Kirksey learned of the facts underlying her Monell claim for failure to discipline.

While Kirksey's response in opposition to summary judgment states that "its [sic] clear she exercised 'reasonable diligence' after learning she had a cause of action when her allegations was [sic] brought to light," she offers no facts to argue that she acted with reasonable diligence to uncover the City's actions that caused her injury. Pl's Resp. Mot. Summ. J. 10, ECF No. 85. Because Kirksey offers no evidence to support the application of the discovery rule to her claim, the Court finds that no reasonable jury could find that the discovery rule applies here. Given that her claim was brought after the two-year statutory period following her injury, it is time-barred.

Kirksey further argues in her response in opposition to summary judgment that the Court should apply the doctrine of

equitable tolling to allow her claim to proceed. "Unlike the discovery rule, which determines the time of the initial commencement of a limitations period, [e]quitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." Forbes v. Eagleson, 228 F.3d 471, 486 (3d Cir. 2000) (citations and quotations omitted).

A plaintiff seeking equitable tolling of the statute of limitations must demonstrate reasonable diligence in uncovering the extent and existence of her injury. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 390 (3d Cir. 1994) (noting that equitable tolling and the discovery rule "are similar in that each requires a level of diligence on the part of the plaintiff"), overruled on other grounds by Rotiske v. Klemm, 890 F.3d 422, 428 (3d Cir. 2018). Again, Kirksey has offered no evidence that she did anything at all, much less acted with reasonable diligence to ascertain the existence and cause of the injury identified in her remaining claim. Accordingly, the Court cannot apply equitable tolling to rescue her claim.

### B.   Viability of Kirksey's Monell Claim

The City finally argues that, even if Kirksey's claim is not otherwise precluded, summary judgment is appropriate in the

11

City's favor because she has not produced evidence that could conceivably support her remaining Monell claim.

"[A] municipality may be held liable only if its policy or custom is the moving force behind a constitutional violation." Stanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citations and quotations omitted). "If the policy or custom does not facially violate federal law, causation can be established by 'demonstrat[ing] that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" Trapchak v. Cnty. of Lackawanna, 739 F. App'x 172, 178 (3d Cir. 2018) (alterations in original) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)). A plaintiff must also allege conduct by a municipal decisionmaker. McTernan v. City of York, Pa., 564 F.3d 658-59 (3d Cir. 2009).

To succeed on a Monell claim based on a failure to discipline, a plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).

Kirksey's <u>Monell</u> claim fails because she has not identified any specific action or inaction by the City (or any of its agents) that could be interpreted as a message of approval of Ross's misconduct. <u>See</u> <u>Bonenberger</u>, 132 F.3d at 25 ("[Plaintiff] has alleged no specific inaction by [the offending officer's] supervisors that could be interpreted as encouraging his actions."). On the contrary, Ross was fired by the mayor for the misconduct identified in Plaintiff's remaining claim. While Ross was subsequently re-hired, his re-hiring was based more on a technicality than any admission that his actions were tolerated. Furthermore, upon being re-hired, Ross was subject to a year of probation and spent several years confined to a desk where he could be closely monitored by his supervisors.

Because Kirksey has not produced evidence of any conduct that may be construed as the City approving of or encouraging Ross's misconduct, she cannot establish a City custom or policy that caused her injury. Accordingly, even if it were not barred by the statute of limitations, her <u>Monell</u> claim for failure to discipline cannot survive summary judgment.

## V.    CONCLUSION

For the reasons set forth above, the Court will grant the City's motion for summary judgment and enter judgment in its favor and against Kirksey.

An appropriate order follows.